UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SUSAN H. REYES,

        Plaintiff,

    V.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

09-CV-285
(LEK/VEB)

## I. INTRODUCTION

In May of 2006, Plaintiff Susan Reyes filed an application for Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since September 2, 2004. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, through her attorney, Peter W. Hill, Esq., commenced this action on March 10, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On November 5, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 12).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff filed an application for DIB on May 28, 2006, alleging disability beginning September 2, 2004. (T at 10, 63-68).[1] The application was denied initially and upon reconsideration. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (T at 10). On February 26, 2008, Plaintiff appeared, along with her attorney, in Richmond, Virginia, and testified at a hearing before ALJ Timothy Pace. (T at 10, 17-38). On March 18, 2008, ALJ Pace issued a written decision denying the application for benefits. (T at 10-16). The ALJ's decision became the Commissioner's final decision on January 16, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 2-4).

Plaintiff, through counsel, commenced this action on March 10, 2009. (Docket No. 1). The Commissioner interposed an Answer on June 10, 2009. (Docket No. 5). Plaintiff filed a supporting Brief on July 23, 2009. (Docket No. 9). The Commissioner filed a Brief in opposition on July 28, 2009. (Docket No. 10).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted and that this case be dismissed.

---

[1]Citations to "T" refer to the Administrative Transcript. (Docket No. 7).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

### III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

   **1.    Commissioner's Decision**

The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2004. (T at 12).  The ALJ determined that Plaintiff had not engaged in substantial gainful activity between her alleged onset date of September 2, 2004, and her date last insured.  He found that through the date last insured, Plaintiff had intrinsic bronchial asthma, which the ALJ concluded was a severe impairment. (T at 12). Through the date last insured, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 13).  The ALJ further found that, through the date last insured, Plaintiff had the residual functional capacity to perform light work, as defined in C.F.R. § 404.1567 (b), except for work requiring frequent exposure to temperature extremes or environmental irritants. (T at 13).

The ALJ's conclusion was that Plaintiff could perform her past relevant work as a school registered nurse. (T at 15). The ALJ's ultimate finding was that Plaintiff was not under a disability as defined under the Act during the period between her alleged onset date and the date last insured. (T at 15).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. Plaintiff offers three (3) principal arguments in support of her position. First, Plaintiff asserts that the ALJ should have afforded controlling weight to the assessment of her treating physician. Second, Plaintiff argues that the ALJ's residual functional capacity determination is not supported by substantial evidence. Third, Plaintiff contends that the ALJ did not properly evaluate the credibility of her testimony. In sum, Plaintiff asserts that the evidence of disability is so persuasive that this matter should be remanded solely for the calculation of benefits. Each argument will be addressed in turn.

### a. Treating Physician

Plaintiff began treating with Dr. Herbert Knight in October of 2004. (R at 194). Dr. Knight completed a Pulmonary Questionnaire in May of 2007, in which he noted Plaintiff's diagnosis of asthma, chronic sinusitis, and allergies. (T at 155). Dr. Knight indicated that Plaintiff experiences severe shortness of breath with diffuse wheezing. (T at 155). He opined that Plaintiff's symptoms were sufficiently severe to frequently interfere with attention and concentration. (T at 156). Dr. Knight described Plaintiff's prognosis as "good," but indicated that she would not be able to function in a competitive work setting. (T at 156). In Dr. Knight's opinion, Plaintiff could stand/walk for less than 2 hours in an 8-

hour work day, sit for about 2 hours, frequently lift/carry less than 10 pounds, occasionally lift/carry 10 pounds, but never more than 10 pounds, and would need to take unscheduled breaks during a work shift. (T at 156-57). Dr. Knight further concluded that Plaintiff would need to be absent from work more than three times per month and that she is unable to maintain any gainful employment due to frequent and severe exacerbation of her condition. (T at 158). Dr. Knight thereafter indicated that the findings in his May 2007 report applied to Plaintiff's condition as of October 13, 2004, and that he believed she had been precluded from work activity since that time. (T at 199).

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R.

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

§ 404.1527(d)(1)-(6); see also de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003); Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, the ALJ correctly summarized the treating physician standard (T at 14), analyzed the evidence, and determined that Dr. Knight's opinions were entitled to "little weight." (T at 15). This Court finds that the ALJ's conclusion was in accord with applicable law and supported by substantial evidence.

As noted by the ALJ, Dr. Knight was Plaintiff's primary care physician and not a pulmonary specialist. (T at 15). Plaintiff was not referred to a pulmonary specialist during the relevant time period (September 2, 2004, to December 31, 2004). When she was seen by a pulmonary specialist, Dr. Robert Radin, in September 2005, allergy testing was negative and pulmonary testing indicated only "mild small airway obstruction." (T at 130).

Moreover, Dr. Knight's 2007 assessment that Plaintiff was unable to work during the relevant time period, which he made nearly three (3) years after the fact, is contradicted by the his contemporaneous treatment notes, which did not indicate the presence of disabling asthma attacks or acute respiratory symptoms. (T at 187-94). During her first visit on October 13, 2004, Plaintiff reported a stuffy nose, sinus pain, a shortness of breath, but indicated that she had no wheezing. (T at 193). Dr. Knight prescribed Sudafed and scheduled a 10-day follow-up visit. (T at 194). At the follow-up visit on October 24, 2004, Plaintiff reported that her bronchitis was gone and she was "feeling better." (T at 191). She had no more wheezing or coughing and her energy level had returned. (T at 191).

Approximately one month later, on November 23, 2004, Plaintiff was seen again by Dr. Knight and reported using the neublizer three times during the previous week after

exposure to animal hair and perfumes. (T at 189). Plaintiff experienced improvement when she avoided that exposure. On exam, Dr. Knight noted only mild wheezing. (T at 189). He prescribed Augmentin and indicated that Plaintiff should follow-up in a week if she did not see improvement. (T at 189-90). Plaintiff's next visit came over a month later, on December 29, 2004 (two days prior to the end of the relevant time period). Although Dr. Knight reported Plaintiff's complaints of serious symptoms following exposure to mold, on examination, he noted no wheezing, rales, or rhonci and described her air exchange as "good." (T at 187-88).

Further support for the ALJ's assessment is found in the determination of State Agency Review physician, Dr. Leopold Moreno, who opined that Plaintiff had no exertional limitations (T at 135) and needed to avoid moderate exposure to fumes, odors, dust, gases, and poor ventilation. (T at 137). Although the ALJ ultimately concluded that Plaintiff's residual functional capacity was more limited than that, Dr. Moreno's determination provides significant support for the ALJ's decision not to afford controlling weight to Dr. Knight's opinion.

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial

evidence if they are consistent with the record as a whole.").

Lastly, Plaintiff submitted a letter from Dr. Knight to the Appeals Council, dated April 10, 2008 (after the ALJ's decision), in which Dr. Knight took issue with the September 2005 test results. Specifically, Dr. Knight suggested that Plaintiff might have used her inhaler before the testing was conducted, resulting in findings much more mild than her actual condition. (T at 201). The Appeals Council considered this new evidence (T at 2), but determined that it did not provide a basis for changing the ALJ's decision. This Court finds no error in the Appeals Council's conclusion.

The Appeals Council is required to consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b)."

To obtain a review of the additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Sergenton v. Barnhart, 470 F.Supp.2d 194, 204 (E.D.N.Y.2007) (citing Lisa v. Sec'y of Health & Human Servs., 940 F.2d 40, 43 (2d Cir.1991)).

Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." Id. If the Appeals Council fails to consider new, material evidence, "the proper course for the

reviewing court is to remand the case for reconsideration in light of the new evidence." Shrack v. Astrue, 608 F.Supp.2d 297, 302 (D.Conn.2009).

Here, as noted by the Appeals Council, Dr. Knight's retroactive assessment was rendered more than three (3) years after the relevant time period and approximately two and a half years after the September 2005 testing. Further, his suggestion that Plaintiff's test results may have been skewed because she might have taken her inhaler prior to the testing is speculative. As discussed above, Dr. Knight is Plaintiff's primary care doctor, not a pulmonary specialist. Further, the Appeals Council noted a December 2006 assessment by Dr. Knight that appears to contradict his later findings. In that assessment, Dr. Knight noted Plaintiff's severe symptoms and opined that she was totally disabled, but also indicated that she could reach, walk, and sit for greater than 5.5 hours and stand for up to 5.5 hours. (T at 161). He also indicated that she could perform light lifting, carrying, pushing, and pulling. (T at 161). In light of the foregoing, this Court finds no reversible error in the Appeals Council's conclusion that there was no reasonable probability that Dr. Knight's April 2008 assessment would have influenced the ALJ to decide the case differently.

### b. RFC Determination

Plaintiff notes that the ALJ rejected the residual functional capacity determinations of both her treating physician and the State Agency review physician. Thus, Plaintiff argues, there is no substantial evidence supporting the ALJ's residual functional capacity determination.

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily,

RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ found that Plaintiff retained the RFC to perform light work, except for work requiring frequent exposure to temperature extremes and environmental irritants. As defined by the applicable Regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567 (b).

The ALJ did not accept the RFC determination of Plaintiff's treating physician (which indicated total disability) and also did not fully adopt the RFC determination of the State Agency review physician (which indicated very minimal limitation). Instead, the ALJ synthesized the findings, examined the medical records from the relevant time period,

considered Plaintiff's subjective complaints, and rendered a detailed RFC determination. This Court finds no error in this determination and notes that it is supported by substantial evidence.

The ALJ credited Plaintiff's testimony that her symptoms were significantly aggravated by temperature extremes or environmental irritants and incorporated those limitations into his RFC determination. (T at 15). He noted the lack of any medical evidence indicating that Plaintiff was unable to sit for prolonged periods. The ALJ's conclusion that Plaintiff could walk and stand for six hours in an eight-hour day is largely consistent with Dr. Knight's December 2006 assessment[5] (T at 161). Dr. Radin, the pulmonary specialist, noted only mild findings. (T at 130). Although not accepted fully by the ALJ, the State Agency review physician's assessment provides some support for the ALJ's RFC determination to the extent that the review physician's findings were certainly consistent with the conclusion that Plaintiff could perform the requirements of light work. during the relevant time period. As such, this Court finds no reversible error in the ALJ's RFC determination.

    **c.**    **Credibility Assessment**

Pointing to earnings records indicating that she maintained steady employment from 1973 through 1999, Plaintiff argues that she was entitled to substantial credibility and that the ALJ erred by discounting her testimony of disabling symptoms.

Subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying

---

[5]Although this assessment post-dates the relevant period, Dr. Knight opined on more than one occasion that he believed Plaintiff's limitations had existed since October 2004. (T at 199, 201).

condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

The ALJ must follow a two-step process to evaluate the plaintiff's contention, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027,

2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, the ALJ found that Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects of those symptoms were not fully credible. (T at 14). As noted above, the ALJ did credit Plaintiff's testimony to the extent that he found she must avoid frequent exposure to temperature extremes and environmental irritants. (T at 15). However, this Court finds no error in the ALJ's decision not to credit Plaintiff's claims of total disability. As noted above, the contemporaneous treatment notes from the relevant period, the objective testing, and assessment of the State Agency review physician all provide support for the ALJ's determination.

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

This Court finds that the ALJ exercised his discretion to evaluate the credibility of

Plaintiff's testimony, presented a fair summary of his evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984). The ALJ's decision should therefore be upheld.

## IV. CONCLUSION

After carefully examining the administrative record, this Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating source, and afforded Plaintiff's subjective claims an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error. Because the Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

_/s/ Victor E. Bianchini_
Victor E. Bianchini
United States Magistrate Judge

Dated: February 10, 2010

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE**

**OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

February 10, 2010

*[signature]*

Victor E. Bianchini
United States Magistrate Judge